UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
ERNEST ANDRADE-BARTELDES,                                               :
                                                                        :
                                        Plaintiff,                      :
                                                                        :     23-cv-00495 (LJL)
                -v-                                                     :
                                                                        :     MEMORANDUM AND
JOSE VALENCIA ET AL.,                                                   :     ORDER
                                                                        :
                                        Defendants.                     :
                                                                        :
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/04/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Ernest Andrade-Barteldes ("Plaintiff") moves, pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23, for: (1) an order granting conditional certification of this case as a collective action under the Fair Labor Standards Act of 1938 ("FLSA") and certification of this case as a class action under Federal Rule of Civil Procedure 23, (2) an order approving Plaintiff's proposed class notice, (3) an order approving Plaintiff as the class representative, (4) an order approving Levine & Blit, PLLC as class counsel, (5) an order compelling the production of a class list that includes the names and last known addresses of putative class members, and (6) an order tolling the running of the statute of limitations for absent class members.  Dkt. No. 49.

For the following reasons, Plaintiff's motion is granted as modified by this Memorandum and Order.

## BACKGROUND

The Court assumes the truth of the well-pleaded allegations of the complaint.  Dkt. No. 1.

Defendant ASA College ("ASA") is a higher education institution for thousands of students with locations in New York and Kings counties in New York City.  *Id.* ¶ 7.  Defendant

Alexander Shchegol ("Shchegol") is the founder and sole owner of ASA, and served for many years as President of ASA until he was removed in 2019. *Id.* ¶¶ 8–10. In or around October 2021, after the Board of Directors of ASA refused to reinstate him to the position of President, Shchegol obtained the position anyway by using his ownership stake to remove members of the Board of Directors who did not support his reinstatement. *Id.* ¶¶ 11–13. He then resigned as President on December 31, 2021, but continued to maintain significant operational and financial control over the institution. *Id.* ¶¶ 14–15. After Shchegol's resignation, defendant Jose Valencia ("Valencia" and together with ASA and Shchegol, "Defendants") became President of ASA. *Id.* ¶ 16. Shchegol and Valencia each had the power to hire or fire, controlled the conditions of employment of employees of ASA, determined the rate and method of payment of ASA employees, and maintained employment records for ASA. *Id.* ¶ 39.

Beginning in approximately 2010, Plaintiff was employed by Defendants as an English as a Second Language ("ESL") professor at its college in New York. *Id.* ¶¶ 53–54. He was paid on an hourly and not a salary basis. *Id.* ¶¶ 55–56. In 2022, he worked approximately twenty-eight to thirty hours per week, including three hours of administrative and clerical work per week for which he was not paid. *Id.* ¶¶ 57–58.

In or around November 2022, ASA lost its accreditation effective March 1, 2023, in part due to its failure to timely pay its employees. *Id.* ¶¶ 17–18. During a November 14, 2022 Zoom meeting for ASA faculty regarding the loss of accreditation and appeal options, Shchegol promised the faculty they would be paid their wages owed plus a five percent bonus. *Id.* ¶¶ 19–23. On January 3, 2023, Valencia wrote members of the faculty that Shchegol had not been able to secure the funding needed for ASA to pay its future payrolls, and that ASA would not be able secure such funding in the near future, but that employees would not be working for free because

their wages would continue to accrue. *Id.* ¶¶ 24–27. On January 16, 2023, Valencia wrote employees that he and Shchegol had been trying hard to get funding to pay the December 23, 2022 unpaid payroll and had secured the funding to do so. *Id.* ¶¶ 31–32. Valencia also wrote that he and Shchegol had been trying hard to secure funding for the coming January 20, 2023 payroll. *Id.* ¶ 33.

Plaintiff alleges that he and members of the class he purports to represent were not paid any wages for work they performed for the pay period ending December 23, 2022, and the pay period ending January 6, 2023. *Id.* ¶ 75. Plaintiff further alleges that it was Defendants' policy and practice not to compensate its professors or instructors for administrative or clerical work. *Id.* ¶ 59. He also alleges that although he and members of the putative class were to be paid bi-weekly pursuant to ASA's pay policies and practices, they were not paid in a timely manner on numerous occasions in 2022. *Id.* ¶¶ 62-73.[1]

## PROCEDURAL HISTORY

This case was initiated by complaint filed on January 20, 2023. Dkt. No. 1. The complaint asserts claims on behalf of Plaintiff individually, on behalf of a FLSA collective comprised of all similarly situated members of the ASA faculty, *id.* ¶¶ 40, 43,[2] and on behalf of a Rule 23 class comprised of all ASA faculty members since January 19, 2017, *id.* ¶ 45. On behalf of himself and all members of the FLSA collective, Plaintiff asserts a claim for unpaid minimum wages under FLSA. *Id.* ¶¶ 77–82. On behalf of himself and the putative Rule 23 class, Plaintiff asserts the following additional claims: unpaid minimum wages in violation of the New York

---

[1] In his memorandum of law and declaration in support of the instant motion, Plaintiff asserts that ASA closed its business on February 24, 2023. Dkt. No. 50 ¶ 25; Dkt. No. 52 at 1.
[2] The complaint does not reflect the time period for the FLSA collective. In his proposed notice, Plaintiff states that the FLSA collective consists of all professors and instructors who were employed by Defendants at ASA College's New York City campuses at any time between December 17, 2022 and the present. Dkt. No. 51-3 at 4.

3

Labor Law, *id.* ¶¶ 83–88, unpaid earned wages in violation of the New York Labor Law §§ 191, 193, 198, *id.* ¶¶ 89–94, untimely wages in violation of the New York Labor Law § 191, *id.* ¶¶ 95–101, unjust enrichment, *id.* ¶¶ 102–05, and quantum meruit, *id.* ¶¶ 106–10.

Between January 24, 2023 and April 10, 2023 notices of consent to join the action pursuant to 29 U.S.C. § 216(b) were filed for twenty-eight different individuals, including Plaintiff himself. Dkt Nos. 10–23, 25–29, 31, 34–35, 40–42, 44, 48, 54. On February 13, 2023, Plaintiff filed an Affidavit of Service reflecting that service had been effected on Shchegol. Dkt. No. 30. On February 17, 2023, Plaintiff filed proofs of service with respect to ASA College and Valencia. Dkt. Nos. 32–33.

On March 6, 2023, Plaintiff filed a letter with the Court, which he served on Defendants, indicating that all Defendants had been served with process, that their time to respond to the complaint had expired, and that they were therefore in default. Dkt. Nos. 36–37. Plaintiff stated his intention to file a motion for class and collective certification and then, after the motion had been decided upon, to seek entry of default and a default judgment. Dkt. No. 36. On March 27, 2023, Valencia, appearing *pro se*, answered the complaint. Dkt. No. 45. The Court held an initial pretrial conference on March 28, 2023, at which Plaintiff appeared and Valencia appeared *pro se*; no other Defendants appeared. March 28, 2023 Minute Entry. On March 30, 2023, the Count entered a Case Management Plan and Scheduling Order, as well as an Order directing Plaintiff to make his motion for class certification no later than April 4, 2023, Defendants to respond to the motion by April 21, 2023, and Plaintiff to reply by April 28, 2023. Dkt. Nos. 46–47.[3]

---

[3] The Court specifically notified Valencia of the availability of the NYLAG Pro Se Clinic for legal assistance. Dkt. No. 46. Although the Court directed that its March 30, 2023 Order, *id.*, be

On April 4, 2023, Plaintiff filed this motion for certification of the class and conditional certification of the collective along with two supporting declarations and a memorandum of law. Dkt. Nos. 49–52. Plaintiff served the motion on Defendants. Dkt. No. 53. No Defendant has opposed the motion. On November 22, 2023, the Court directed the parties to inform the Court of the status of the case, Dkt. No. 59, and on November 29, 2023, Plaintiff wrote the Court asking the Court to rule upon the pending motion for certification of the class and conditional certification of the collective and that, after such ruling, Plaintiff would file a motion for default judgment against all Defendants on behalf of the class and collective simultaneously, Dkt. No. 60.[4]

## DISCUSSION

Plaintiff argues that the Court should conditionally certify a class of all faculty members employed by ASA since January 19, 2017, to pursue the NYLL claims alleged in the complaint, Dkt. No. 1 ¶ 45, and should conditionally certify a FLSA collective of all similarly situated members of the ASA faculty to pursue the FLSA claim, Dkt. No. 1 ¶ 43.

## I. The Relevant Standards for Class and Collective Certification

"Plaintiffs seeking certification of a Rule 23(b)(3) damages class action must first establish numerosity, commonality, typicality, and adequacy of representation, and then predominance of common questions of law or fact and the superiority of a class action over other

---

mailed to Plaintiff at the address provided to the Clerk of Court, the mail was returned as not deliverable, April 25, 2023 Minute Entry.

[4] On June 5, 2023, Plaintiff wrote the Court requesting an informal discovery conference based on Valencia's failure to respond to Plaintiff's discovery demands. Dkt. No. 55. The letter indicated that although Valencia appeared at the initial pretrial conference, he had failed to respond to interrogatories, requests for production, and a notice of deposition served upon him by email and by United States mail to his last known address. *Id.* The Court issued Orders on June 7, 2023 and July 7, 2023, directing Valencia to show cause why he should not be deemed in default for failure to respond to the motion for certification, or to respond to discovery. Dkt. Nos. 56–57. Valencia did not respond to the show-cause Orders.

5

procedures." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (citing Fed. R. Civ. P. 23(a), (b)(3)), *cert. dismissed*, 142 S. Ct. 639 (2021).  The Court has an independent duty to determine that the requirements of Rule 23 are met; those requirements cannot be established by default.  *See Suris v. Collive Corp.*, 2022 WL 542987, at *4 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 541765 (E.D.N.Y. Feb. 23, 2022); *Winegard v. Crain Commc'ns, Inc.*, 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021) (Nathan, J.).

The numerosity inquiry focuses on whether the class is so large "that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts have long applied a presumption that a class of forty members is sufficiently numerous that joinder of all members would be impracticable.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Even so, the inquiry does not end with simple tabulation of numbers; "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers.  Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."  *Robidoux*, 987 F.2d at 936 (internal citations omitted).

The commonality inquiry depends upon there being "a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[W]hat matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to

generate common *answers* apt to drive the resolution of the litigation." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Wal-Mart*, 564 U.S. at 350 (emphasis in original)). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quoting *Spencer v. No Parking Today, Inc.*, 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013)).

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936; *see also Barrows*, 24 F.4th at 131 ("Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. 338)). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal citations omitted) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

"Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs."

7

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)). "[T]wo factors generally inform [the inquiry]" of whether a named class representative is adequate under Rule 23: "(1) absence of conflict and (2) assurance of vigorous prosecution." *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) (quoting *Robinson*, 267 F.3d at 170). "In evaluating [the adequacy] requirement, courts consider whether the class representatives are familiar with the action and 'whether they are of sufficient moral character to represent a class.'" *Zivkovic*, 329 F.R.D. at 71 (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011)). "In addition, 'where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,' certification of the class is not appropriate because the representative cannot act in the best interest of the class." *Id.* at 71–72 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

In addition, before a class is certified under Rule 23(b)(3), the Court must find that common issues predominate over individual issues, and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Scott*, 954 F.3d at 512 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance requirement "is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). "[T]he superiority determination involves, either explicitly or implicitly, a comparison of the class action—

representative litigation—as a procedural mechanism to available alternatives." 2 Newberg on Class Actions § 4:64 (5th ed.).

Finally, "a court that certifies a class must appoint class counsel" at the same time it certifies the class, and the court is thus required to consider the adequacy of class counsel in its class certification decision. Fed. R. Civ. P. 23(g); *see also* 1 Newberg on Class Actions § 3:84 (5th ed.). In determining whether class counsel should be appointed, a court must "address the mandatory factors set forth in Fed. R. Civ. P. 23(g)," *Kimber v. Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (summary order), which require consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Section 216(b) of the FLSA permits an employee aggrieved by a violation of the statute to maintain an action against any employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."). The Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537,

9

554 (2d Cir. 2010). In the first step, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs." *Id.* at 555. Plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Mere "unsupported assertions" are not sufficient to pass the first step, but it "should remain a low standard of proof because the purpose of the first stage is to merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Id.* (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*

The standards for certifying a collective action under Section 216(b) "bear little resemblance" to those for certifying a class under Rule 23. *Scott*, 954 F.3d at 519. For the court to conditionally certify a case as a collective action under Section 216(b), it is sufficient there exist potential opt-in plaintiffs who are "similarly situated" to the named plaintiffs in that "they share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Id.* at 521; *see also id.* at 516. Common issues need not predominate among members of the collective: "if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, 'dissimilarities in other respects should not defect collective treatment.'" *Id.* at 516 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)). There is no requirement that the number of potential opt-ins be numerous, that the class action be superior to other available methods for adjudicating the dispute, or that there be a representative who is adequate and whose claims are typical. *See id.* at 519 ("Section

216(b) has nothing comparable to Rule 23(b)(3)'s requirements of predominance or superiority. And Rule 23's requirements of adequacy and typicality are intended to protect the due process rights of absent class members, which is not a consideration in a nonrepresentative action such as a collective action under § 216(b)."); *Huang v. Shanghai City Corp*, 2022 WL 1468450, at *7 (S.D.N.Y. May 10, 2022).

## II. Certification of the Rule 23 Class and Conditional Certification of the FLSA Collective

Plaintiff has satisfied the requirements of Federal Rule of Civil Procedure 23.  First, Plaintiff has satisfied the numerosity requirements.  He has offered evidence, upon information and belief, that ASA employed more than 200 professors or instructors at its New York location in 2022, including approximately eighty professors or instructors in the ESL Department.  Dkt. No. 50 ¶¶ 7–8; Dkt. No. 45 ¶¶ 60–61.  There also are common issues applicable to all class members, including the questions whether Defendants were each employers within the meaning the NYLL, whether Defendants failed to pay Plaintiff and members of the putative class minimum wages, whether it was the policy and practice of Defendants not to pay professors and instructors for administrative and clerical work, and whether Defendants failed to pay Plaintiff and putative class members on a timely basis when wage payments were due.  Dkt. No. 45 ¶¶ 64–73 (admissions that payments for wages were not remitted to Plaintiff and class members when such payments were due).  Plaintiff's claims are typical of those of the members of the class he proposes to represent; he was employed by Defendants as an ESL professor from April 2009 through January 20, 2023, was paid on an hourly basis, and was not paid for administrative and clerical work.  Dkt. No. 50 ¶¶ 2–3, 5.  He swears and it is admitted that he was not paid wages when those wages were due, and that he was not paid any wages for his work after December 17, 2022.  Dkt. No. 45 ¶¶ 64–73, 75; Dkt. No. 50 ¶¶ 10–21, 23.  The last pay period for which he was paid ended December 16, 2022.  Dkt. No. 50 ¶ 24.

11

Plaintiff has also demonstrated that he is an adequate class representative. He has submitted a declaration that he is intimately familiar with the facts of the action and is willing and able to serve as a class representative, that he "will do what is necessary to further the best interests of the putative class and collective," and that he is unaware of any conflict of interest that would prevent him from serving as class representative. Dkt. No. 50 ¶¶ 26, 28–29. He has selected qualified class counsel, Levine & Blit, PLLC, which the Court also approves as class counsel. Levine & Blit, PLLC has focused its practice on labor and employment litigation, and the individual counsel who has appeared on behalf of Plaintiff has litigated wage and hour claims for ten years, including class actions and collective actions. Dkt. No. 51 ¶ 6. It has put together a thorough complaint and is committed to litigating the claims on behalf of Plaintiff and members of the class and collective. *Id.* ¶ 7. Having considered the factors identified in Federal Rule of Civil Procedure 23, the Court approves Levine & Blit, PLLC as class counsel.

The "predominance" and "superiority" requirements have been satisfied. From the evidence before the Court all members of the proposed class have been subject to the identical employment policies. Dkt. No. 50 ¶¶ 9–21, 23–24. All of them have been late paid and underpaid. *Id.* The further questions whether Defendants are employers and whether they are covered by the NYLL are common to all class members. There are no individual issues that predominate over the common issues. There is no other mechanism for collectively resolving the NYLL claims of the class members that is superior to the class action vehicle.[5]

For all of the same reasons, the FLSA collective is conditionally certified. Plaintiff has

---

[5] Plaintiff asks for an order that the claims of the absent class members of the putative class be tolled from the date of the filing of the motion. Dkt. No. 52 at 13. An order is not necessary. Tolling of a Rule 23 class action is applicable as a matter of law. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

put forward evidence that he and the potential opt-in plaintiffs were victims of a common policy or plan that violates FLSA.

### III. Approval of Notice

Plaintiff also asks that the Court approve its form of proposed class notice and issue an order directing Defendants to provide a class list containing the names and last known addresses of all putative class members within twenty-one days.  Dkt. No. 52 at 15.

Rule 23(c)(2)(B) directs that:  "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Id.*; *see also Hamsher v. Scotts Company, LLC*, 2019 WL 13379536, at *3 (S.D.N.Y. Feb. 1, 2019).

Similar standards apply to notice under Section 216(b).  "In determining the particulars of the notice, courts are guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burden on the defendants."  *Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *5 (S.D.N.Y. July 8, 2022).  The Court's responsibility is to make sure that notice "is timely, accurate, and informative."  *Hoffman-La Roche*, 493 U.S. at 172.  At the same time, the Court must avoid "notices that are 'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading.'"  *Huer Huang v. Shanghai City Corp*, 2020

13

WL 5849099, at *17 (S.D.N.Y. Oct. 1, 2020) (quoting *Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 664 (S.D.N.Y. 2017)); *see also Mikityuk v. Cision US Inc.*, 2021 WL 1750370, at *7 (S.D.N.Y. May 4, 2021).  "[T]he notice process for case management purposes is distinguishable in form and function from the solicitation of claims," and "courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at 174.

The proposed form of notice at Dkt. No. 51-3 is approved subject to the following alterations: (1) within the first block of text on page 2, in the box containing the header "Fair Labor Standards Act Claims," the reference to "Defendant's" should be changed to read "Defendants" and the following language should be added to the end of the second-to-last sentence: "return to class counsel within 60 days of the mailing of this Notice"; (2) within the second block of text on page 2, in the box containing the header "New York State Labor Law Claims," the following language should be added to the end of the second sentence: "of the NYLL class action lawsuit"; (3) in the response to Question 4 on page 4, the language reading "plaintiff who filed this lawsuit are similarly situated," should be changed to "plaintiff who filed this lawsuit is similarly situated"; (4) the sentence carrying over from page 4 to page 5 that reads "They are experienced in handling similar cases against other employers" should be deleted; and (5) the following language should be added such that the notice states: "While this suit is pending, you may be required to provide documents or information relating to your employment, or otherwise participate in written discovery, depositions, and/or in a trial of this matter in the United States District Court for the Southern District of New York.  For this reason, you should preserve all documents relating to your employment by Defendants." *See Mikityuk*, 2021 WL 1750370, at *8.

The Court will permit the submission of the consent forms directly to Plaintiff's counsel, and also directs Plaintiff's counsel to file the consent forms on the ECF docket on the day that they are received. In that manner, and given the efficiencies of electronic filing, the Court will attempt to avoid any prejudice to the would-be opt-ins. *See Martinenko v. 212 Steakhouse Inc.*, 2022 WL 1227140, at *8 (S.D.N.Y. Apr. 26, 2022).

With respect to the discovery of names and addresses of members of the class and the collective, the Supreme Court has held that district courts have authority "to permit discovery of the names and addresses" of potential members of the collective action. *Hoffman-La Roche*, 493 U.S. at 170. Thus, in furtherance of the general purposes of FLSA, "[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) (quoting *Martin v. Sprint/United Mgmt. Co.*, 2016 WL 30334, at *19–20 (S.D.N.Y. Jan. 4, 2016) (collecting cases)); *see also Knox*, 282 F. Supp. 3d at 663 (same). Defendants are therefore directed to provide a class list containing the names and last known addresses of all putative class members within twenty-one days.

## CONCLUSION

The motion for certification of the Rule 23 class and conditional certification of the FLSA collective is GRANTED. Plaintiff is appointed as class representative and Levine & Blit, PLLC, is appointed as class counsel. The notice is approved as modified by this Memorandum and Order and the request for discovery is granted.

The Clerk of Court is respectfully directed to close Dkt. No. 49, and to send a copy of this Memorandum and Order to the *pro se* Defendant Valencia.

SO ORDERED.

Dated: December 4, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge